IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

DAMASO LLAMAS CUETO,      )
                                   )
          Plaintiff,       )
                                   )
     v.               )         CV 314-103
                                   )
STACEY N. STONE and       )
STACY GILES,              )
                                   )
          Defendants.    )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at McRae Correctional Facility ("MCF"), is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case. Before the Court is Defendants' unopposed motion for summary judgment. (Doc. no. 20.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

## I.    PROCEDURAL BACKGROUND

Because Plaintiff is proceeding IFP, the Court screened Plaintiff's complaint in compliance with the IFP statute, 28 U.S.C. §§ 1915(e) and 1915A. The Court allowed Plaintiff to proceed with the claim presently at issue for deliberate indifference to a serious medical need, based on Plaintiff's allegations that he has not received proper medical treatment for a hernia condition. (See doc. nos. 1, 9.) Plaintiff asserts this claim against

Defendant Stacey N. Stone, Warden at MCF, and Stacy Giles, Health Administrator at MCF, and seeks $80,000 in damages, as well as an injunction ordering that he receive surgery for his condition.[1]  (See doc. no. 1, Compl., pp. 1, 2, 6.)  Plaintiff had also sued Charles B. Samwel, the Director of the Bureau of Prisons, but the Court dismissed the claims against him.  (See doc. nos. 10, 13.)

The case proceeded through the standard discovery period, during which Defendants took Plaintiff's deposition.  (Doc. no. 20, Ex. B, Pl.'s Dep.)[2]  Defendants filed their motion for summary judgment arguing that state court is the proper forum for Plaintiff to pursue his claims and that in any event, his claims against these two Defendants fail on the merits.  (See generally doc. no. 20.)  Despite receiving an extension of time to respond, and despite receiving detailed warnings pursuant to Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), of the consequences of failing to respond as required by the Federal Rules of Civil Procedure and Eleventh Circuit case law, (see doc. no. 24), Plaintiff failed to submit any response to Defendants' dispositive motion.  Thus, the Court deems the motion to be unopposed.  Loc. R. 7.5.

---

[1]The correct spelling of Defendant Giles' name is not clear from the record, as his declaration is entitled "Declaration of Stacey Giles," the opening paragraph contains a scrivener's error referring to the declarant as "Stacey N. Stone," but the body and signature line of the declaration refers to "Stacy Giles."  (Doc. no. 20, Ex. C.)  The Court presumes the nomenclature is correct as it appears on the signature line and in the supplemental declaration, (doc. no. 27, Ex. A), submitted on January 8, 2016, Stacy Giles.

[2]The deposition attached as Exhibit B to the summary judgment motion was not certified by the court reporter, but upon prompting from the Court, the requisite signature was obtained.  (See doc. nos. 24, 25.)  For ease of reference, the Court cites to the deposition attached to the motion for summary judgment.

Because Defendants submitted with their summary judgment motion a Statement of Material Facts Not in Dispute pursuant to Loc. R. 56.1, which Plaintiff has not opposed, the Court deems admitted all evidentially supported facts in that Statement. See Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement). However, this does not automatically entitle Defendants to summary judgment because as movants, they continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review Defendants' representation of the record, including Plaintiff's sworn deposition testimony, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.    FACTS

Plaintiff was born in Mexico, and lived in Minnesota without benefit of United States citizenship prior to his current incarceration. (Pl.'s Dep., pp. 4-5.) He had a hernia prior to his incarceration but did not go to a doctor or hospital for treatment. (Id. at 5.) Plaintiff aggravated the hernia while in prison in Minnesota, and he received surgery on three hernias: one in the stomach and on each side. (Id.) After the surgery, he had a fight in prison which aggravated his condition, but he did not receive any additional surgery in Minnesota prior to his transfer to MCF. (Id. at 6-7.)

3

Upon his arrival at MCF, Plaintiff received a hernia belt that worked for two years, but he filed this lawsuit because he believes that he needs hernia surgery, as the hernia belt no longer works to alleviate his pain.  (Id. at 8-9.)  Plaintiff acknowledges that he has been examined by a doctor at MCF, and he concedes that no doctor at MCF has told him that he needs hernia surgery.  (Id. at 9.)  Although Plaintiff has no medical training, he contends the doctors at MCF are not conducting proper examinations when deciding that hernia surgery is not medically necessary.  (Id. at 8, 11.)  Plaintiff asserts his condition interferes with his sleep and limits his ability to exercise, and he wants to be transferred to another facility that will give him the treatment he thinks he needs.  (Id. at 9.)

In Plaintiff's grievance regarding his hernia filed in June 2014, he requested an ultrasound test and surgery to remove the hernia.[3]  (Compl., p. 7.)  The informal response, dated June 10, 2014 and signed by Leslie Ruggenberg, Registered Nurse and Clinical Supervisor at MCF, informed Plaintiff that surgical intervention is not medically necessary when a hernia is reducible and can be managed.  (Id. at 8, 10.)  Upon filing a formal grievance, MCF's Utilization Review Committee reviewed Plaintiff's request for an ultrasound and hernia surgery on June 26, 2014.  (Id. at 12.)  Based on the evaluation of a physician assistant who determined Plaintiff's hernia had remained stable from 2012 to 2014,

---

[3]Defendants reference Grievance Number 2014-2503-0147 in their summary judgment briefing and claim to have attached it as Exhibit E to their motion.  (Doc. no. 20, pp. 7, 9.)  However, counsel did not actually provide the Court with an Exhibit E.  Indeed, the Notice of Filing lists only Exhibits A, B, and C.  (Id. at 16.)  Nevertheless, Plaintiff attached to his complaint Grievance Number 2014-2503-0147, as well as the informal grievance that preceded the June 26, 2014 and July 10, 2014 responses from Defendant Giles and Stone, respectively, (Compl., pp. 7-14), such that the Court has been able to review the relevant information that defense counsel omitted.

the Committee deemed Plaintiff's treatment requests elective, and his grievance was denied. (Id.) On appeal, Defendant Stone's response dated July 10, 2014, recounted the findings of the Committee and stated, "[T]he hernia is not life threatening, nor surgically necessary to prevent rapid deterioration of [Plaintiff's] health." (Id.) The appeal was denied, and this lawsuit was filed approximately one month later.

As to specific allegations against Defendants Stone and Giles, Plaintiff does not maintain that they are responsible for conducting medical examinations to determine whether surgery is necessary, but if a doctor says a prisoner at MCF needs surgery, these two Defendants "give the order" for the operation. (Pl.'s Dep., p. 11.) Plaintiff asserts Defendant Stone, "the head of" MCF and the person who denied Plaintiff's grievance appeal, is responsible for making sure that MCF prisoners receive adequate medical care and has failed to do so in this case. (Compl., p. 5.) Defendant Giles, "the head of" medical services at MCF, also has a duty to make sure that MCF prisoners receive adequate medical care and has failed to do so in this case. (Id.) Although Plaintiff stated at his deposition that he was not aware of a request for monetary damages in this lawsuit, the Complaint seeks $80,000 in damages from Defendant Stone. (Pl.'s Dep., p. 10; Compl., p. 2.) Plaintiff also seeks an order directing that he be provided the surgery he believes he needs. (Compl., pp. 2, 6.)

Defendant Giles, a licensed and registered nurse in Georgia, serves as the Health Services Administrator at MCF. (Doc. no. 20, Ex. C, Giles Decl., ¶ 1.) Although his duties do not include delivery of medical care to inmates, he is familiar with Plaintiff's medical condition by virtue of reviewing Plaintiff's medical records that are kept in the normal course of business at MCF. (Id. ¶¶ 1-2.) According to Defendant Giles, upon Plaintiff's arrival at

MCF, he was examined by a physician assistant, told to wear his hernia belt, given pain medication, and assigned a bottom bunk. (Id. ¶ 4.) While at MCF, Plaintiff has been seen by a physician assistant, nursing personnel, and a physician, with a focused evaluation on Plaintiff's hernia conducted on June 24, 2014, approximately three months prior to filing this lawsuit. (See id.; Compl.) No changes were noted to the 4.5 cm hernia, and the examination produced no recommendation for surgery. (Giles Decl., ¶ 6.) Subsequent medical records show that despite the hernia condition, Plaintiff has been able to participate in sports activities, as he received medical attention on February 15, 2015, for an eye injury garnered while playing softball. (Id. ¶ 6; Pl.'s Dep., p. 9.)

Defendant Stone, as Warden of MCF, is responsible for the overall administration of MCF, but does not direct medical staff to provide prisoners with specific medical evaluations or procedures, as he is not a trained or licensed physician or medical provider of any kind. (Doc. no. 20, Stone Decl., ¶¶ 1-2.) Requests for medical procedures at MCF do not go through the warden's office, but as part of the grievance process utilized by Plaintiff, inquiries about his condition were made to MCF medical staff. (Id. ¶ 3.) As described above, that staff inquiry resulted in a determination that surgery was not medically necessary, and Defendant Stone declared that as of August 3, 2015, Plaintiff's condition does not require present outside consultation or surgery. (Id.)

Plaintiff was again examined on December 9, 2015 by Walter Branch, M.D. (Doc. no. 27, Ex. B, Branch Decl., ¶ 6.) Dr. Branch did not find an inguinal hernia during the examination, and Plaintiff denied dysuria or constipation, possible signs that a more aggressive diagnosis or intervention might be needed. (Id.) Dr. Branch suggested further

testing to include an abdominal wall/pelvic wall ultrasound, and that testing conducted on December 18, 2015, showed an apparent inguinal hernia with an abdominal wall defect measuring 2 cm.  (Id. ¶ 7.)  Dr. Branch attests that Plaintiff's condition is stable and not life threatening, and he opines that hernia surgery is not medically necessary.  (Id. ¶ 9.)

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      Because Plaintiff Seeks More than Monetary Damages, His Case May Proceed in Federal Court.**

Defendants first argue that they are entitled to summary judgment because Plaintiff's claims for monetary damages must be asserted in the state courts rather than federal court. (Doc. no. 20, p. 7.) Defendants cite case law from the Eleventh Circuit and the United States Supreme Court in support of their argument that Plaintiff does not have a federal remedy for the constitutional violation alleged because he is suing employees of a private prison contractor, and he has adequate remedies in the state courts. (Id. at 6-7, 13.) In Alba v. Montford, 517 F.3d 1249, 1254-56 (11th Cir. 2008) and Minneci v. Pollard, 132 S. Ct. 617, 626 (2012), the courts held that a federal prisoner like Plaintiff who seeks damages from private employees working at a privately operated prison may not proceed with a federal case for damages under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

In both Alba and Minneci, *supra*, the plaintiffs sought monetary damages, and the courts determined that a Bivens remedy could not be implied. Alba, 517 F.3d at 1254-56; Minneci, 132 S. Ct. at 626. Here, however, Plaintiff seeks more than monetary damages. He also seeks an order that he be provided surgery. (Compl., pp. 2, 6.) In Alba, the Eleventh Circuit specifically acknowledged that in addition to monetary damages, the plaintiff sought an order for surgery. 517 F.3d at 1252 n.5. However, on appeal, the plaintiff only argued an entitlement to damages, and therefore the Eleventh Circuit specifically refused to address any issues related to the request for equitable relief. Id. Likewise, the holding in Minneci is specific to "a federal prisoner [who] seeks *damages* from privately employed personnel working at a privately operated federal prison." 132 S. Ct. at 626 (emphasis added).

Defendants here do not acknowledge the request for equitable relief by Plaintiff. Although it is true that a claim for monetary damages by a federal prisoner against private employees working at a privately operated prison is barred by existing precedent, Defendants have not argued, let alone identified any case law stating, that federal courts are prohibited from considering equitable claims like those raised by Plaintiff. Thus, the Court proceeds to consider the merits of Plaintiff's Eighth Amendment claim.

**C.    Plaintiff Cannot Hold Defendants Liable Based on a Theory of Supervisory Liability.**

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) ("Because vicarious

liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). Therefore, to hold Defendants Stone and Giles liable, Plaintiff must demonstrate that either (1) Defendants actually participated in the alleged constitutional violation, or (2) there is a causal connection between Defendants' actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, Plaintiff has not shown that either person actually participated in the alleged deliberate indifference. Rather, he alleges that Defendant Stone and Defendant Giles are "the head of" MCF and the medical services department, respectively, who denied his grievance and refused to "give the order" for surgery. Nowhere does Plaintiff allege that these two Defendants were the individuals responsible for examining him or making the medical determination as to whether his hernia condition requires surgery. Defendant Giles is a licensed and registered nurse in Georgia, but his duties do not include providing medical care to MCF inmates. (Giles Decl., ¶¶ 1-2.) Defendant Stone is not a trained medical provider and does not direct medical staff regarding what type of evaluations or procedures should be provided to MCF inmates. (Stone Decl., ¶¶ 1-2.)

Indeed, Plaintiff acknowledged at his deposition that he has been examined by medical staff at MCF and that neither named Defendant is responsible for conducting medical examinations to determine whether surgery is necessary. (Pl.'s Dep., pp. 9, 11.) Courts have recognized that supervisory prison officials who are not medical professionals must rely on the decisions of trained medical practitioners regarding care provided to inmates. See Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.).

Nor has Plaintiff alleged the requisite causal connection between these two Defendants and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act

unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has failed to present any evidence of a widespread problem with medical care at MCF, let alone evidence putting these two supervisory Defendants on notice of such a problem. Plaintiff contends that Defendants were aware of a problem because they ruled on his grievance and appeal, respectively. But Plaintiff cannot establish liability merely because he filed a grievance or appeal upon which Defendants ruled. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed "to afford [plaintiff] relief during the grievance process," because record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with plaintiff's wishes concerning information in grievance and a letter) (Bowen, J.); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at facility within his jurisdiction based on receipt of letter describing allegedly improper prison conditions); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in grievances), cert. denied, 530 U.S. 1264 (2000).

In sum, Plaintiff has not shown Defendants Stone or Giles actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. As Plaintiff has improperly attempted to hold Defendants Stone and Giles liable based solely on their supervisory positions, the motion for summary judgment should be granted.

### D. Even if Plaintiff Had Sued a Medical Provider at MCF Rather than Two Supervisors, the Undisputed Facts Show that Plaintiff Cannot Satisfy the Prima Facie Elements of a Deliberate Indifference Claim.

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must show that person: (1) was subjectively aware of a serious risk of harm, (2) disregarded that risk (3) by

following a course of action which constituted "more than [gross] negligence." Id. at 1326-27.

Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the

adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").  "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008 (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).  Moreover, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002).

Even assuming Plaintiff has demonstrated a serious medical need under the first element of a deliberate indifference claim, no reasonable person could find that the medical care afforded Plaintiff at MCF rises to the level of deliberate indifference.  Plaintiff's case is similar to Palazon, where the Eleventh Circuit affirmed a grant of summary judgment against a prisoner who claimed that the prison's delay in performing surgery on his inguinal hernia constituted deliberate indifference in causing him greater pain than necessary.  Id. at 89. Instead of receiving surgery, the plaintiff received a hernia truss, pain medication, and a wheelchair to help him move around.  Id.  Specifically, the "doctors did not want to operate on the hernia as long as it remained reducible."  Id.  The Eleventh Circuit reasoned that the care the plaintiff received was not so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.  Id.

In this case, Plaintiff's hernia has been monitored by medical personnel at MCF, the size of the hernia has remained stable, and it is reducible. (Giles Decl., ¶¶ 4-6.) Plaintiff has received care in the form of a hernia belt, pain medication, and assignment to a bottom bunk, and Plaintiff has been able to engage in team sports activities despite his condition. (Id.; Pl.'s Dep., p. 9.) Moreover, Dr. Branch's examination of Plaintiff in December of 2015 revealed only a "questionable" hernia, and ultrasound testing was ordered because Dr. Branch could not find a hernia by examination. (Branch Decl., ¶ 6.) The inguinal hernia discovered by ultrasound examination was 2 cm, which Dr. Branch evaluated as "very small" and not requiring surgery. (Id. ¶¶ 7, 9.)

Similar to Palazon, Plaintiff's care in this case has not been so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. 361 F. App'x at 89. Plaintiff simply disagrees with the chosen course of treatment by medical personnel at MCF. Such a disagreement cannot form the basis for a deliberate indifference claim. Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033; Smith, 375 F. App'x at 910. Nor has Plaintiff placed any verifying medical evidence in the record establishing a detrimental effect from any delay in treating his hernia condition such that he could support a claim for deliberate indifference based on a delay in medical treatment. Hill, 40 F.3d at 1188.

Thus, even if Plaintiff had sued a medical provider rather than the two supervisory officials named as Defendants, he has not established that his medical treatment at MCF violates the Eighth Amendment.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 11th day of January, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA